1  NICOLA T. HANNA
   United States Attorney
2  THOMAS D. COKER
   Assistant United States Attorney
3  Chief, Tax Division
   JOHN D. ELLIS (Cal. Bar No. 322922)
4  Assistant United States Attorney
        Federal Building, Suite 7211
5       300 North Los Angeles Street
        Los Angeles, California 90012
6       Telephone: (213) 894-2740
        Facsimile: (213) 894-0115
7       E-mail: john.ellis3@usdoj.gov

8  Attorneys for Plaintiff
   United States of America
9

10              UNITED STATES DISTRICT COURT

11        FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                    WESTERN DIVISION

13  UNITED STATES OF AMERICA,        No. 2:18-cv-00803-MWF(JEMx)

14              Plaintiff,           Notice of Motion for Summary Judgment;
                                     Memorandum of Points and Authorities;
15         v.                        Declarations of Krista M. Groen and John
                                     D. Ellis; Proposed Judgment
16  JANE BOYD,
                                     Hearing Date:    March 11, 2019
17              Defendant.           Hearing Time:    10:00 a.m.
                                     Location:        First Street Courthouse
18                                                    350 W. First Street
                                                     Courtroom 5A
19                                                    Los Angeles, CA 90012

20                                   Hon. Michael W. Fitzgerald

21

22         PLEASE TAKE NOTICE that on the above-captioned date and time, or as soon

23  thereafter as counsel can be heard, the United States of America (United States) will

24  move for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).  The

25  United States requests that the Court enter a judgment decreeing that defendant Jane

26  Boyd (Boyd) is indebted to the United States and personally liable for civil penalties

27  (FBAR penalties), late-payment penalties, and interest assessed for the 2010 calendar

28  year.

1    The basis for the United States' motion is set forth fully in the accompanying

2    memorandum of points and authorities.  The United States submits that there is no

3    genuine dispute as to any material fact and that it is entitled to judgment as a matter of

4    law.  Counsel for the United States and Boyd conferred, pursuant to Local Rule 7-3, on

5    October 24, 2018.  This motion is based upon the attached memorandum of points and

6    authorities, the files and records in this case, and such further evidence and argument as

7    may be presented at the hearing on this matter.

8    Dated: February 11, 2019            Respectfully submitted,

9                                        NICOLA T. HANNA
                                         United States Attorney
10                                       THOMAS D. COKER
                                         Assistant United States Attorney
11                                       Chief, Tax Division

12

13                                         /s/ John D. Ellis
                                         JOHN D. ELLIS
14                                       Assistant United States Attorney

15                                       Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA
16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is a civil collection action brought by the United States under 31 U.S.C. § 5321(b)(2)(A).  The United States seeks to reduce to judgment $47,279 of FBAR penalties, late-payment penalties in the amount of $1,453, and $453 of interest assessed against Boyd.  The FBAR penalties resulted from Boyd's failure to timely report United Kingdom (U.K.) financial accounts she held during 2010.  The Internal Revenue Service (IRS) assessed an FBAR penalty for thirteen of the fourteen foreign accounts held by Boyd.  Each penalty was computed based on the highest balance contained in the account during 2010.  Because each penalty was timely assessed, below the maximum permitted by law, and consistent with the IRS's internal guidelines, the Court should reduce the penalties, plus late-payment penalties and interest thereon, to judgment.

## II.   STATEMENT OF FACTS

Boyd is a United States citizen.  (Compl., ECF Doc. 1 ¶ 10; Answer, ECF Doc. 14, ¶ 10).  During 2010, Boyd had a financial interest in, signatory authority over, and/or otherwise controlled the following U.K. financial accounts:

| | Financial Institution | Account Type | Last 4 Digits of Account No. | High Balance (GBP) | High Balance (USD) | Date of High Balance |
|---|---|---|---|---|---|---|
| 1. | NS&I Bonds | Bonds | 7712 | £21,921 | $34,251 | 7/28/2010 |
| 2. | Invesco Perpetual | Securities | 1187 | £7,054 | $11,022 | 4/5/2010 |
| 3. | Henderson Global Investors | Securities | 6613 | £1,620 | $2,531 | 5/13/2010 |
| 4. | Henderson Global Investors | Securities | 2526 | £1,223 | $1,911 | 5/13/2010 |
| 5. | Baille Gifford | Securities | 3389 | £14,868 | $23,232 | 4/12/2010 |
| 6. | Halifax | Bank | 2144 | £31,901 | $49,845 | 5/22/2010 |
| 7. | Halifax | Bank | 6282 | £45,006 | $70,322 | 4/16/2010 |
| 8. | HSBC | Bank | 3099 | £150,015 | $234,398 | 5/25/2010 |
| 9. | HSBC | Bank | 5957 | £49,000 | $76,562 | 6/1/2010 |
| 10. | HSBC | Bank | 5841 | £49,000 | $76,562 | 6/1/2010 |
| 11. | HSBC | Bank | 5930 | £49,000 | $76,562 | 6/1/2010 |

1

| 12. | HSBC | Bank | 1743 | £147,000 | $229,688 | 6/1/2010 |
| 13. | Northern Rock | Bank | 4249 | £50,214 | $78,460 | 8/1/2010 |
| 14. | Santander | Bank | 1566 | £35,244 | $55,068 | 6/1/2010 |
| | | | | Total | $1,020,414 | |

(Declaration of John D. Ellis (Ellis Decl.), Ex. 3, pp. 2-3, Request for Admission (RFA) No. 3).

The U.K. accounts had collective balances in excess of $10,000.  (Id.).  As a United States citizen, Boyd was required to file a Treasury Department Form 90-22.1, Report of Foreign Bank and Financial Accounts (FBAR), reporting her foreign financial accounts.  The FBAR was due no later than June 30, 2011.  (Id., p. 5, RFA No. 15).  Boyd, however, did not file a timely FBAR for the 2010 calendar year.  (Id.)

Boyd received interest and dividends from the U.K. accounts in 2010.  (Id., p. 3, RFA No. 4).  However, she did not report the interest and dividends on her 2010 federal income tax return.  (Id., p. 5, RFA No. 12).  Nor did she otherwise disclose the existence of her U.K. accounts on that return.  (Declaration of Krista Groen (Groen Decl.), Exs. 26-27, Bates Nos. 168-173).

In 2012, Boyd submitted an application to participate in the IRS's Offshore Voluntary Disclosure Program (OVDP), an IRS initiative intended to provide a predictable and uniform penalty structure for taxpayers who wished to voluntarily report previously undisclosed offshore financial accounts.  (Ellis Decl. Ex. 3, p. 6, RFA No. 17).  Boyd was accepted into the OVDP and submitted, in October of 2012, a delinquent FBAR for 2010, as well as other years that are not at issue.  (Id., p. 6, RFA No. 18; Groen Decl. Ex. 63).  Around the same time, Boyd amended her 2010 federal income tax return to reflect the interest and dividends she received from the U.K. accounts.  (Groen Decl. Exs. 27-28, Bates Nos. 170-173).

In March of 2014, Boyd requested to opt out of the OVDP.  (Ellis Decl. Ex. 3, pp. 6-7, RFA No. 19).  The IRS agreed.  (Id., p. 7, RFA No. 20).  Opting out of the OVDP meant that the IRS would examine her income tax returns for the years for which no

FBAR was submitted.  (Id., p. 7, RFA No. 21).  In addition, the IRS would determine whether to assert FBAR penalties against Boyd pursuant to 31 U.S.C. § 5321(a)(5).  (Id.)

The IRS eventually concluded that Boyd had committed at least thirteen FBAR violations but that she had not violated her reporting requirements willfully.  It accordingly assessed, on June 9, 2016, the following penalties against her:[1]

|  | Financial Institution | Acct Type | Last 4 Digits of Account No. | High Balance in 2010 | Amount of Penalty |
|---|---|---|---|---|---|
| 1. | NS&I Bonds | Bonds | 7712 | $34,251 | $3,425 |
| 2. | Invesco Perpetual | Securities | 1187 | $11,022 | $1,102 |
| 3. | Henderson Global Investors | Securities | 6613 | $2,531 | $253 |
| 4. | Henderson Global Investors | Securities | 2526 | $1,911 | $191 |
| 5. | Baille Gifford | Securities | 3389 | $23,232 | $2,323 |
| 6. | Halifax | Bank | 2144 | $49,845 | $4,985 |
| 7. | Halifax | Bank | 6282 | $70,322 | $5,000 |
| 8. | HSBC | Bank | 3099 | $234,398 | $5,000 |
| 9. | HSBC | Bank | 5957 | $76,562 | $5,000 |
| 10. | HSBC | Bank | 5841 | $76,562 | $5,000 |
| 11. | HSBC | Bank | 5930 | $76,562 | $5,000 |
| 12. | Northern Rock | Bank | 4249 | $78,460 | $5,000 |
| 13. | Santander | Bank | 1566 | $55,068 | $5,000 |
|  |  |  |  | Total | $47,279 |

(Id., pp. 8-9, RFAs No. 25, 26, and 28).

Consistent with IRS guidelines, the amount of each FBAR penalty was computed based on the highest balance contained in the relevant account during 2010.  (Groen Decl. Ex. 74, Bates Nos. 0376 and 0384).  For accounts containing $50,000 or more, the

---

[1] No penalty was asserted with respect to Boyd's HSBC account ending in -3099, which was used to fund Boyd's HSBC accounts ending in -5957, -5841, and -5930. (Groen Decl. Ex. 55, Bates No. 257; Ex. 74, Bates Nos. 135-142).

3

IRS asserted a $5,000 penalty.  (Id.)  For accounts containing less than $50,000, the IRS asserted a penalty equal to 10% of the highest balance in the account.  (Id.)  On June 10, 2016, the IRS sent Boyd a letter demanding payment of the FBAR penalties.  (Groen Decl. Ex. 2).

## III.    STANDARD OF REVIEW

Summary judgment is appropriate if the moving party can demonstrate that there is no genuine dispute of any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Celotex v. Catrett, 477 U.S. 317, 325 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When reviewing FBAR penalties, courts have applied a two-step inquiry.  An accountholder's liability for the penalties is reviewed de novo.  See United States v. Williams, 2010 WL 4373311 at *1 (No. 09-437, E.D. Va. Sept. 1, 2010), rev'd on other grounds 489 Fed. App'x 655, 659 (4th Cir. 2012); Moore v. United States, 2015 WL 1510007 at *4 (W.D. Wash. April 1, 2015). The amounts of the penalties, however, are reviewed for abuse of discretion.  Id.  In reviewing whether the IRS abused its discretion, the Court should presume that the IRS acted correctly but nevertheless conduct a "thorough, probing, in-depth review" of the administrative record.  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-417 (1971).  But the Court should not substitute its judgment for the IRS's.  E.g., id.

## IV.    ISSUES

    A.    Whether Boyd is liable for thirteen non-willful FBAR penalties.

    B.    Whether the IRS abused its discretion in computing the amounts of the FBAR penalties.

    C.    Whether Boyd is liable for late-payment penalties and interest.

## V.    LAW AND ANALYSIS

### A.    Defendant violated the Bank Secrecy Act at least thirteen times

The Currency and Foreign Transactions Reporting Act, also called the Bank Secrecy Act (BSA), 31 U.S.C. § 5311-25, was enacted in 1970.  Pub. L. 91-508, 84 Stat. 1114.  The BSA imposed various reporting requirements intended to have "a high degree

1    of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C. §

2    5311; see also California Bankers Ass'n v. Shultz, 416 U.S. 21, 26 (1974).  The BSA, as

3    relevant here, requires U.S. citizens to report to the Secretary of the Treasury any

4    relationships they have with foreign financial accounts exceeding $10,000.  31 U.S.C. §

5    5314; 31 C.F.R. §§ 1010.306 and 1010.350.  Covered relationships include "having a

6    financial interest in[] or signature authority over" a foreign financial account, including a

7    bank or securities account.  31 C.F.R. § 1010.350.  In addition to disclosing the

8    relationships, accountholders must provide all of the information specified on the FBAR

9    reporting form (Treasury Department Form 90-22.1).  31 C.F.R. § 1010.350(a).  An

10   FBAR is an information report--no tax is due with its filing--that must be submitted no

11   later than June 30 of the year following the year during which the account was held.  31

12   C.F.R. § 1010.306(d); United States v. Williams, 489 Fed. Appx. 665 (4th Cir. 2012).

13        The IRS is authorized to assess civil penalties against individuals who violate the

14   FBAR reporting requirements.  See 31 U.S.C. §§ 5314 and 5321.  These penalties come

15   in two varieties: non-willful and willful.  A penalty for a non-willful FBAR violation

16   cannot exceed $10,000.  31 U.S.C. § 5321(a)(5)(B)(i).  A penalty for a willful FBAR

17   violation can be the greater of $100,000 or 50% of the balance in the account at the time

18   of the violation.  31 U.S.C. § 5321(a)(5)(C)-(D).  The IRS has six years from the

19   FBAR's due date to assess (i.e., record) penalties.  31 U.S.C. § 5321(b)(1).

20        In this case, the IRS determined that Boyd committed thirteen non-willful

21   violations of the FBAR reporting requirements.  With respect to such violations, 31

22   U.S.C. § 5321(a)(5)(B)(ii) provides that no FBAR penalty can be imposed if (1) the

23   violation to which it relates is attributable to reasonable cause and (2) the amount of the

24   transaction or the balance in the account at the time of the transaction was properly

25   reported.  Boyd does not contend that her failure to timely report the U.K. accounts was

26   attributable to reasonable cause.  (Ellis Decl., Ex. 4, p. 2, Interrog. No. 1).  The only

27   issue, then, is whether the FBAR penalties at issue were otherwise permissible.  They

28   were.

5

In 2010 Boyd held at least thirteen U.K. financial accounts that contained aggregate balances in excess of $10,000.  She was required to report the accounts no later than June 30, 2011.  Boyd, however, did not file an FBAR on or before that date. In failing to timely report the accounts to the IRS, Boyd committed at least thirteen violations of the FBAR reporting requirements.  As such, the IRS was authorized to assess at least thirteen FBAR penalties against her.  It did so on June 9, 2016.  Because the six-year assessment statute for 2010 expired on June 30, 2017, each assessment was timely.  31 U.S.C. § 5321(b)(1).

**B.**   **The IRS did not abuse its discretion in computing the amount of the FBAR penalties**

The IRS has broad discretion to determine the amount of a non-willful FBAR penalty.  This is reflected in 31 U.S.C. § 5321(a)(5)(A), which provides only that such a penalty "shall not exceed $10,000."  Downward departures from this maximum are within the IRS's discretion.  See United States v. Williams, 2014 WL 3746497 at *2 (No. 09-437, E.D. Va. Jun. 26, 2014).  The IRS has developed internal guidelines, found in the Internal Revenue Manual (IRM), to assist its employees in exercising their discretion.[2]  See IRM pt. 4.26.16.4.4 (Rev. July 1, 2008).  These guidelines "do[] not have the force of law and do[] not confer rights on taxpayers."  See Fargo v. Commissioner, 447 F.3d 706, 713 (9th Cir. 2006).  But they are instructive as to how the IRS exercised its discretion in this case.

With respect to FBAR penalties, the IRM contained mitigation guidelines intended to ensure that examiners "appli[ed] [FBAR] penalties in a uniform manner." IRM pt. 4.26.16.4.7(2) (Rev. July 1, 2008).  The mitigation guidelines were only

---

[2] The IRM frequently changes.  All references in this filing refer to the version of the IRM in effect during the IRS's examination of Boyd.  Copies of the cited IRM provisions are attached to the Ellis Declaration as Exhibits 5-8.

6

available to accountholders who met four threshold conditions.[3]  If those conditions were met, the IRM set forth three levels of mitigation for non-willful violations of the FBAR reporting requirement.  See IRM pt. 4.26.16.4.6.2 (Rev. July 1, 2008); IRM Ex. 4.26.16-2 (Rev. July 1, 2008).  Each mitigation level was based on the maximum balance in the account to which the penalty related.  Id.  A taxpayer could qualify for Level II non-willful mitigation with respect to an FBAR violation if "the maximum balance of the account to which the violation[] relate[d] at any time during the calendar year did not exceed $250,000."[4]  IRM Ex. 4.26.16-2 (Rev. July 1, 2008).  With respect to such violations, the IRM provided that the applicable penalty would be the lesser of $5,000 or 10% of the maximum balance in the account during the year.  Id.

The IRS determined that Boyd was eligible to mitigate the FBAR penalties at issue in this case.  Specifically, it determined that she had satisfied the four threshold conditions set forth in the IRM and that she was eligible for Level II non-willful mitigation with respect to each of the U.K. accounts, since each account contained less than $250,000.  (Groen Decl. Ex. 59, Bate No. 0273).  The IRS applied its mitigation guidelines as set forth in the IRM: no FBAR penalty exceeded 10% of the maximum balance in the relevant account or $5,000.  Because the penalties at issue were consistent

---

[3] The threshold conditions were that (1) the accountholder had no history of criminal tax or BSA convictions for the preceding 10 years, as well as no history of past FBAR penalty assessments; (2) no money passing through any of the foreign accounts was from an illegal source or used to further a criminal purpose; (3) the accountholder cooperated during the examination (i.e., IRS did not have to resort to a summons to obtain non-privileged information; the accountholder responded to reasonable requests for documents, meetings, and interviews; and the accountholder back-filed correct reports); and (4) the IRS did not sustain a civil fraud penalty against the accountholder for an underpayment for the year in question due to the failure to report income related to any amount in a foreign account.  IRM 4.26.16.4.6 (Rev. July 1, 2008)

[4] Level II non-willful mitigation also required that Level I non-willful mitigation did not apply.  IRM Ex. 4.26.16-2 (Rev. July 1, 2008).  Level I non-willful mitigation was unavailable to Boyd because at least one of her foreign accounts contained more than $50,000.

1    with IRS guidelines and below the maximum amount authorized by Congress, the IRS

2    did not abuse its discretion in determining the amount of the FBAR penalties.[5]

3    **C.    Defendant is liable for late-payment penalties and interest**

4    In addition to the FBAR penalties, Boyd is liable as a matter of law for a late-

5    payment penalties and interest.  The former accrues when a debt is not timely paid. 31

6    U.S.C. § 3717(e)(2).  The latter accrues upon notice and demand for payment.  31 U.S.C.

7    § 3717(a) and (b).

8    **VI.    DEFENDANT'S CONTENTIONS**

9    The parties have discussed this motion and the cross-motion that.  Based on these

10    discussions, they disagree as to what constitutes a violation of the FBAR reporting

11    requirements.  Boyd contends that there is only one violation contemplated by 31 U.S.C.

12    § 5321(a)(5): the failure to file an FBAR.  The implication of this contention is that the

13    IRS can assess only one non-willful FBAR penalty, not to exceed $10,000, per calendar

14    year.  Defendant's position, however, is not supported anywhere in the BSA or the

15    regulations promulgated thereunder.

16    The IRS is authorized to assess an FBAR penalty "on any person who violates, or

17    causes any violation of, any provision of [31 U.S.C.] section 5314."  31 U.S.C. §

18    5321(a)(5)(A).  What constitutes a violation of section 5314 is found in 31 C.F.R. §

19    1010.350(a):

20           Each United States person having a financial interest in, or signature or

21           other authority over, a bank, securities, or other financial account in a

22           foreign country shall report such relationship to the Commissioner of

23           Internal Revenue for each year in which such relationship exists and shall

24

25    [5] The IRM also provided that "[g]iven the magnitude of the maximum penalties
26    permitted for each violation, the assertion of separate penalties for multiple violations
      with respect to a single FBAR form should be considered only the most egregious
27    cases."  IRM pt. 4.26.16.4.7(4) (Rev. July 1, 2008).  The IRS reasonably determined that
      Boyd's case was egregious.  Boyd's foreign accounts held aggregate balances in excess
28    of $1,000,000.  The proposed FBAR penalties are comparatively modest, representing
      less than 5% of that amount.

8

provide such information as shall be specified in a reporting form prescribed under 31 U.S.C. § 5314 to be filed by such persons. The form prescribed under section 5314 is the Report of Foreign Bank and Financial Accounts (TD-F 90-22.1), or any successor form.

The import of the regulation is clear: covered persons must (a) report certain relationships (i.e., accounts) they have in foreign countries and (b) with respect to such relationships, provide the information specified on the FBAR form.  Any person that fails to report a foreign financial account or provide information relating such an account violates 31 U.S.C. § 5314 and can be subjected to a civil penalty "not to exceed $10,000."  31 U.S.C. § 5321(a)(5)(A).  That FBAR violations relate to accounts, rather than the form on which they should be reported, is further confirmed by the reasonable cause exception found 31 U.S.C. § 5321(a)(B)(ii).  That exception, only available with respect to non-willful FBAR violations, provides that "[n]o penalty shall be imposed . . . with respect to any violation if (I) such violation was due to reasonable cause, and (II) . . . the balance in the account . . . was properly reported."  31 U.S.C. § 5321(a)(5)(B)(ii) (emphasis supplied).

Boyd's misunderstanding may be attributable to Congress' decision to impose only a statutory maximum for non-willful FBAR penalties, in contrast to willful FBAR penalties, which are sometimes computed as a percentage of the balance contained in the relevant account.  Compare 31 U.S.C. § 5321(a)(5)(C) and (D) with 31 U.S.C. § 5321(a)(5)(A) and (B).  Section 5321's legislative history, however, does not suggest that Congress intended to distinguish the types of violations to which non-willful and willful penalties could apply.  See H.R. Conf. Rep. 108-755 at *1667-1668.  Before 2004, civil penalties were authorized only with respect to willful violations of the FBAR reporting requirement.  Congress, after receiving estimates that "hundreds of thousands of taxpayers with offshore bank accounts [were] attempting to conceal income from the IRS" added a non-willful variant of the FBAR penalty.  Rep. 108-192 at *108.  But nothing in the legislative history suggests that the new penalty would be applied on a

9

per-form, rather than a per-account, basis.  Rather, the new penalty was intended to "improve[e] compliance with [the FBAR] reporting requirements."  See American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 (2004).

In short, while it is true that tax-compliant accountholders will report covered relationships on a properly completed FBAR form, there is nothing to suggest that the failure to file an FBAR form, by itself, is the only way in which an accountholder may violate the reporting requirements.  The better interpretation of the BSA and its implementing regulations is that each non-willful FBAR violation relates to a foreign financial account and that the IRS may penalize each such violation with a penalty not to exceed $10,000.  Boyd's contentions lack merit.[6]

## VII.   CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion for summary judgment.

Dated: February 11, 2019          Respectfully submitted,

NICOLA T. HANNA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division


        /s/ John D. Ellis
JOHN D. ELLIS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

[6] Boyd also believes that the FBAR penalties are inappropriate because the IRS did not follow the guidelines found in the IRM.  As previously described, the IRS followed the IRM, which grants IRS examiners considerable discretion to assess (or decline to assess) FBAR penalties and to determine the amounts of the penalties.  In any event, the IRM "does not have the force of law and does not confer rights on taxpayers." See Fargo, 447 F.3d at 713.

10