NICOLA T. HANNA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
JOHN D. ELLIS (Cal. Bar No. 322922)
Assistant United States Attorney
    Federal Building, Suite 7211
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2740
    Facsimile: (213) 894-0115
    E-mail: john.ellis3@usdoj.gov

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JANE BOYD,<br><br>    Defendant. | No. 2:18-cv-00803-MWF-JEM<br><br>[Proposed] Statement of Uncontroverted Facts and Conclusions of Law<br><br>Hearing Date: March 11, 2019<br>Hearing Time: 10:00 a.m.<br>Location: First Street Courthouse<br>350 W. First Street<br>Courtroom 5A<br>Los Angeles, CA 90012<br><br>Hon. Michael W. Fitzgerald |

    The United States of America's motion for summary judgment came before the Court on March 11, 2019, the Honorable Michael W. Fitzgerald presiding.  Based on the papers filed in support of and in opposition to the motion, the arguments advanced at the hearing, and all matters properly presented as part of the record, the Court makes the following Findings of Uncontroverted Fact and Conclusions of Law:

//

//

//

| | **FINDINGS OF UNCONTROVERTED FACT** | |
|---|---|---|
| 1. | This is a civil collection action brought by the United States under 31 U.S.C. § 5321(b)(2)(A). | Compl., ECF. Doc. 1 |
| 2. | The United States seeks to reduce to judgment $47,279 of civil penalties (FBAR penalties), late-payment penalties in the amount of $1,453, and $453 of interest assessed against Boyd. | Compl., ECF. Doc. 1; Ellis Decl. Ex. 2 |
| 3. | The FBAR penalties resulted from Boyd's failure to timely report United Kingdom (U.K.) financial accounts she held during 2010. | Ellis Decl., Ex. 3, pp. 2-3, Request for Admission (RFA) No. 3. |
| 4. | Boyd is a United States citizen. | Compl., ECF Doc. 1, ¶ 10; Answer, ECF Doc. 14, ¶ 10. |
| 5. | During 2010, Boyd had a financial interest in, signatory authority over, and/or otherwise controlled the following financial accounts in the U.K.:<br><br>| | Financial Institution | Account Type | Last 4 Digits of Account No. | High Balance (GBP) | High Balance (USD) | Date of High Balance |<br>|---|---|---|---|---|---|---|<br>| 1. | NS&I Bonds | Bonds | 7712 | £21,921 | $34,251 | 7/28/2010 |<br>| 2. | Invesco Perpetual | Securities | 1187 | £7,054 | $11,022 | 4/5/2010 |<br>| 3. | Henderson Global Investors | Securities | 6613 | £1,620 | $2,531 | 5/13/2010 |<br>| 4. | Henderson Global Investors | Securities | 2526 | £1,223 | $1,911 | 5/13/2010 | | Ellis Decl., Ex. 3, pp. 2-3, Request for Admission |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 5. | Baille Gifford | Securities | 3389 | £14,868 | $23,232 | 4/12/2010 |
| | 6. | Halifax | Bank | 2144 | £31,901 | $49,845 | 5/22/2010 |
| | 7. | Halifax | Bank | 6282 | £45,006 | $70,322 | 4/16/2010 |
| | 8. | HSBC | Bank | 3099 | £150,015 | $234,398 | 5/25/2010 |
| | 9. | HSBC | Bank | 5957 | £49,000 | $76,562 | 6/1/2010 |
| | 10. | HSBC | Bank | 5841 | £49,000 | $76,562 | 6/1/2010 |
| | 11. | HSBC | Bank | 5930 | £49,000 | $76,562 | 6/1/2010 |
| | 12. | HSBC | Bank | 1743 | £147,000 | $229,688 | 6/1/2010 |
| | 13. | Northern Rock | Bank | 4249 | £50,214 | $78,460 | 8/1/2010 |
| | 14. | Santander | Bank | 1566 | £35,244 | $55,068 | 6/1/2010 |
| | | | | | Total | $1,020,414 | |

(Row above spans column with) (RFA) No. 3.

| # | Statement | Source |
|---|---|---|
| 6. | The U.K. accounts had collective balances in excess of $10,000. | Ellis Decl., Ex. 3, pp. 2-3, RFA No. 3. |
| 7. | Boyd received in 2010 interest and dividends from the U.K. accounts. | Ellis Decl., Ex. 3, p. 3, RFA No. 4. |
| 8. | However, she did not report the interest and dividends on her 2010 federal income tax return. | Ellis Decl., Ex. 3, p. 5, RFA No. 12. |
| 9. | Nor did she otherwise disclose the existence of her U.K. accounts on that return. | Groen Decl., Ex. 26 |
| 10. | In 2012, Boyd submitted an application to participate in the IRS's Offshore Voluntary Disclosure Program (OVDP), an IRS initiative intended to provide a predictable and uniform penalty structure for taxpayers who wished to voluntarily report previously undisclosed offshore financial accounts. | Ellis Decl. Ex. 3, p. 6, RFA No. 17 |
| 11. | Boyd was accepted into the OVDP and submitted, in October of 2012, a delinquent FBAR for the 2010 calendar year, as well as other calendar years that are not at issue. | Ellis Decl., Ex. 3, p. 6, RFA No. |

|     |                                                                                                                                   |                                                      |
| --- | --------------------------------------------------------------------------------------------------------------------------------- | ---------------------------------------------------- |
|     |                                                                                                                                   | 18; Groen Decl. Ex. 63                               |
| 12. | Around the same time, Boyd amended her 2010 federal income tax return to reflect the interest and dividends she received from the U.K. accounts. | Groen Decl. Ex. 28                                   |
| 13. | In March of 2014, Boyd requested to opt out of the OVDP.                                                                          | Ellis Decl. Ex. 3, pp. 6-7, RFA No. 19               |
| 14. | The IRS agreed to allow Boyd to opt out of the OVDP.                                                                              | Ellis Decl., p. 7, RFA No. 20                        |
| 15. | Opting out of the OVDP meant that the IRS would examine Boyd's income tax returns for the years for which no FBAR was submitted.  | Ellis Decl., p. 7, RFA No. 21                        |
| 16. | In addition, the IRS would determine whether to assert FBAR penalties against Boyd.                                               | Ellis Decl., p. 7, RFA No. 21                        |
| 17. | The IRS eventually concluded that Boyd had committed thirteen FBAR violations but that she had not violated her reporting requirements willfully. | Ellis Decl., pp. 8-9, RFAs No. 25, 26, and 28        |
| 18. | The IRS determined that Boyd was eligible to mitigate the FBAR penalties that are the subject of this case.                       | Groen Decl. Ex. 74, Bates Nos.                       |

| | | |
|---|---|---|
| | | 0376 and 0384 |
| 19. | Specifically, it determined that she had satisfied four threshold conditions set forth in the IRM and that she was eligible for Level II non-willful mitigation with respect to each of the U.K. accounts, since each account contained less than $250,000. | Groen Decl. Ex. 59, Bate No. 0273. |
| 20. | The IRS assessed, on June 9, 2016, the following penalties against Boyd: | Ellis Decl., pp. 8-9, RFAs No. 25, 26, and 28 |

| | Financial Institution | Acct Type | Last 4 Digits of Account No. | High Balance in 2010 | Amount of Penalty |
|---|---|---|---|---|---|
| 1. | NS&I Bonds | Bonds | 7712 | $34,251 | $3,425 |
| 2. | Invesco Perpetual | Securities | 1187 | $11,022 | $1,102 |
| 3. | Henderson Global Investors | Securities | 6613 | $2,531 | $253 |
| 4. | Henderson Global Investors | Securities | 2526 | $1,911 | $191 |
| 5. | Baille Gifford | Securities | 3389 | $23,232 | $2,323 |
| 6. | Halifax | Bank | 2144 | $49,845 | $4,985 |
| 7. | Halifax | Bank | 6282 | $70,322 | $5,000 |
| 8. | HSBC | Bank | 3099 | $234,398 | $5,000 |
| 9. | HSBC | Bank | 5957 | $76,562 | $5,000 |
| 10. | HSBC | Bank | 5841 | $76,562 | $5,000 |
| 11. | HSBC | Bank | 5930 | $76,562 | $5,000 |
| 12. | Northern Rock | Bank | 4249 | $78,460 | $5,000 |
| 13. | Santander | Bank | 1566 | $55,068 | $5,000 |
| | | | | Total | $47,279 |

| | | |
|---|---|---|
| 21. | The amount of each FBAR penalty was computed based on the highest balance contained in the relevant account during 2010. | Groen Decl. Ex. 74, Bates Nos. 0376 and 0384 |
| 22. | For accounts containing $50,000 or more, the IRS asserted a $5,000 penalty. | Groen Decl. Ex. 74, Bates Nos. 0376 and 0384 |
| 23. | For accounts containing less than $50,000, the IRS asserted a penalty equal to 10% of the high balance in the account. | Groen Decl. Ex. 74, Bates Nos. 0376 and 0384 |
| 24. | On June 10, 2016, the IRS sent Boyd a letter demanding payment of the FBAR penalties. | Groen Decl. Ex. 2 |
| 25. | Any conclusion of law deemed more appropriately designated as an uncontroverted fact is incorporated here as an uncontroverted fact. | |

//
//
//

**CONCLUSION OF LAW**

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 because it arises under the laws of the United States and the United States is the plaintiff.

2. Venue for the action is within the Central District of California under 28 U.S.C. § 1391(a)(1) because Boyd resides within this judicial district.

3. Summary judgment is appropriate if the moving party can demonstrate that no genuine dispute exists regarding any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex v. Catrett, 477 U.S. 317, 325 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4. An accountholder's liability for FBAR penalties is reviewed *de novo*. See United States v. Williams, 2010 WL 4373311 at *1 (No. 09-437, E.D. Va. Sept. 1, 2010), rev'd on other grounds 489 Fed. App'x 655, 659 (4th Cir. 2012); Moore v. United States, 2015 WL 1510007 at *4 (W.D. Wash. April 1, 2015).

5. The amounts of the FBAR penalties are reviewed for abuse of discretion. United States v. Williams, 2010 WL 4373311 at *1 (No. 09-437, E.D. Va. Sept. 1, 2010), rev'd on other grounds 489 Fed. App'x 655, 659 (4th Cir. 2012); Moore v. United States, 2015 WL 1510007 at *4 (W.D. Wash. April 1, 2015).

**Boyd is Liable for 13 FBAR Penalties**

6. The Currency and Foreign Transactions Reporting Act, also called the Bank Secrecy Act (BSA), 31 U.S.C. § 5311-25, was enacted in 1970. Pub. L. 91-508, 84 Stat. 1114.

7. The BSA imposed various reporting requirements intended to have "a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C. § 5311; see also California Bankers Ass'n v. Shultz, 416 U.S. 21, 26 (1974).

8. The BSA requires U.S. citizens to report to the Secretary of the Treasury any relationships they have with foreign financial accounts exceeding $10,000. 31 U.S.C. § 5314; 31 C.F.R. §§ 1010.306 and 1010.350.

9. Covered relationships include "having a financial interest in[] or signature authority over" a foreign financial account, including a bank or securities account. 31 C.F.R. § 1010.350.

10. In addition to disclosing the relationships, accountholders must provide all of the information specified in the FBAR reporting form (Treasury Department Form 90-22.1). 31 C.F.R. § 1010.350(a).

11. An FBAR is an information report that must be submitted no later than June 30 of the year following the year during which the account was held. 31 C.F.R. § 1010.306(d); United States v. Williams, 489 Fed. Appx. 665 (4th Cir. 2012).

12. The IRS is authorized to assess civil penalties against individuals who violate the FBAR reporting requirements. See 31 U.S.C. §§ 5314 and 5321.

13. A penalty for a non-willful FBAR violation cannot exceed $10,000. 31 U.S.C. § 5321(a)(5)(B)(i).

14. The IRS has six years from the FBAR's due date to assess (record) penalties. 31 U.S.C. § 5321(b)(1).

15. In 2010 Boyd held at least thirteen U.K. financial accounts that contained aggregate balances in excess of $10,000 and was therefore required to report the accounts under 31 U.S.C. § 5314 and the regulations promulgated thereunder.

16. Boyd was required to report the U.K. accounts no later than June 30, 2011.

17. Boyd, however, did not file an FBAR on or before that date.

18. In failing to timely report the accounts to the IRS, Boyd committed at least thirteen violations of the FBAR reporting requirements.

19. The IRS was authorized to assess at least thirteen FBAR penalties against Boyd.

20. The six-year assessment statute for the 2010 tax year expired on June 30, 2017 (i.e., six-years after the June 30, 2011, due date of the FBAR). 31 U.S.C. § 5321(b)(1).

21. Each FBAR penalty at issue in this case was timely assessed. 31 U.S.C. § 5321(b)(1).

22. The complaint was timely filed under 31 U.S.C. § 5321(b)(2).

23. Boyd is liable as a matter of law for thirteen non-willful FBAR penalties under 31 U.S.C. § 5321(a)(5)(A) and (B).

### The IRS did not abuse its discretion in computing the amounts of the FBAR penalties

24. The IRS has broad discretion to determine the amount of a non-willful FBAR penalty.

25. This discretion is reflected in 31 U.S.C. § 5321(a)(5)(A), which provides only that a non-willful FBAR penalty "shall not exceed $10,000."

26. Downward departures from this maximum are within the IRS's discretion. See United States v. Williams, 2014 WL 3746497 at *2 (No. 09-437, E.D. Va. Jun. 26, 2014).

27. The IRS has developed internal guidelines, found in the Internal Revenue Manual (IRM), to assist its employees in exercising their discretion. See IRM pt. 4.26.16.4.4 (Rev. July 1, 2008).

28. The IRM "does not have the force of law and does not confer rights on taxpayers." See Fargo v. Commissioner, 447 F.3d 706, 713 (9th Cir. 2006).

29. With respect to FBAR penalties, the IRM contained mitigation guidelines intended to ensure that examiners "appli[ed] [FBAR] penalties in a uniform manner." IRM pt. 4.26.16.4.7(2) (Rev. July 1, 2008).

30. The mitigation guidelines were only available to accountholders who met four threshold conditions.

31. If those conditions were met, the IRM set forth three levels of mitigation for non-willful violations of the FBAR reporting requirement. See IRM pt. 4.26.16.4.6.2 (Rev. July 1, 2008); IRM Ex. 4.26.16-2 (Rev. July 1, 2008).

32. Each mitigation level was based on the maximum balance in the account to which the penalty related. IRM pt. 4.26.16.4.6.2 (Rev. July 1, 2008); IRM Ex. 4.26.16-2 (Rev. July 1, 2008).

33. A taxpayer could qualify for Level II non-willful mitigation with respect to an FBAR violation if "the maximum balance of the account to which the violation[] relate[d] at any time during the calendar year did not exceed $250,000." IRM Ex. 4.26.16-2 (Rev. July 1, 2008).

34. With respect to such violations, the IRM provided that the applicable penalty would be the lesser of $5,000 or 10% of the maximum balance in the account during the year. IRM Ex. 4.26.16-2 (Rev. July 1, 2008).

35. The penalties at issue were consistent with IRS guidelines and below the maximum amount authorized by Congress; as such, the IRS did not abuse its discretion in determining the amount of the FBAR penalties.

### Boyd is liable for late-payment penalties and interest

36. A late-payment penalty accrues when an FBAR penalty is not timely paid. 31 U.S.C. § 3717(e)(2).

37. Interest on an FBAR penalty accrues upon notice and demand for payment. 31 U.S.C. § 3717(a) and (b).

38. Boyd is liable as a matter of law for late-payment penalties and interest.

39. There is no genuine issue as to any material fact.

40. The United States is entitled to summary judgment as a matter of law.

//
//
//
//
//

41. Any uncontroverted fact more appropriately designated as a conclusion of law is incorporated here as a conclusion of law.

Dated: _____

HON. MICHAEL W. FITZGERALD
UNITED STATES DISTRICT JUDGE

Presented by:

NICOLA T. HANNA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

 /s/ John D. Ellis
JOHN D. ELLIS
Assistant United States Attorney